# VERMILLION v. FIRST NATIONAL BANK OF GREEN-CASTLE.

[No. 8,181.   Filed May 26, 1914.   Rehearing denied April 2, 1915. Transfer denied May 13, 1915.]

1.  APPEAL.—*Review.*—*Findings.*—*Conclusiveness.*—Findings of fact based on conflicting oral testimony are conclusive on appeal where there is evidence to support them.   p. 43.

2.  CHATTEL MORTGAGES.—*Rights of Creditors.*—*Validity.*—Chattel mortgages executed for no other purpose than to secure and procure the payment of the valid claims of the mortgagee are not void by reason of the fact that their existence operates to delay and hinder other creditors, but to render them void for such reason it must appear that the hindering and delaying resulted from a fraudulent intent of the parties to the instrument.   p. 43.

3.  CHATTEL MORTGAGES.—*Stock in Trade.*—*Reservation of Right to Sell.*—Chattel mortgages covering a mercantile stock are not invalid by reason of provisions giving the mortgagor the right to retain possession of the mortgaged goods and to sell in the usual course of trade, requiring him to account to the mortgagee for such sales, and, after deducting the cost of making the sales, to apply the proceeds on the debts secured, and also authorizing the investment of a sufficient amount of the proceeds in new goods to keep the stock in salable condition.   p. 44.

4.  CHATTEL MORTGAGES.—*Fraud Against Creditors.*—*Fradulent Intent.*—Under §7479 Burns 1914, §4920 R. S. 1881, relating to conveyances or assignments of goods made with intent to hinder, delay or defraud creditors, fraudulent intent is a question of fact, and, while such intent may be inferred from facts and circumstances proven, the court or jury trying the issue must draw the inference, and find the existence of the ultimate fact, in order that it may be said that fraudulent intent has been established; hence where the facts were specially found, and there was no finding of the ultimate fact of fraudulent intent, the chattel mortgages involved can not be held void as in fraud of creditors. p. 45.

5.  CHATTEL MORTGAGES.— *Validity.*— *Secret Trusts.*— Under §7480 Burns 1914, §4921 R. S. 1881, providing that transfers or assignments of goods made in trust for the use of the person making the same shall be void as against creditors, the existence of a trust must be found as a fact, and, when so found, the law draws the inference of fraud, but chattel mortgages covering a stock of merchandise, valid on their face and containing nothing to warrant the inference of a secret trust, can not be held void

under such section, where the court's finding of facts included neither a finding of the existence of such a trust, nor facts from which it might be inferred. p. 45.

6. CHATTEL MORTGAGES.— *Remedies of Creditors.— Disposition of Proceeds.*—Where mortgages covering a stock of merchandise contained provisions for the application of proceeds from the sale of goods in regular course of trade to the replenishing of the stock and, after deducting the cost and expense of making the sales, to the payment of the notes, the proceeds not used in replenishing the stock, less the cost and expense of making the sales, will be regarded, as against creditors, as having been applied to the payment of the notes, regardless of whether they were actually so applied; and in determining the amount that should be regarded as applied on the notes, where the mortgagor personally transacted the business of the store, the value of his services are to be included as a part of the cost and expense of making the sales, but any portion of the proceeds used by him for living expenses over and above the value of his services must be deemed as having been applied on the mortgage debt. pp. 47, 50.

7. CHATTEL MORTGAGES.— *Remedies of Creditors.— Disposition of Proceeds.*—Where, in determining the amount that should, as against creditors, be deemed to have been applied on the mortgage debt out of the proceeds arising from the sale of merchandise in regular course of trade, the court found that the mortgagor's wife performed services in the selling of the merchandise, nothing could be deducted therefor, from the amount that must be deemed to have been, applied on the debt, in the absence of any finding as to what her services were worth. p. 50.

8. CHATTEL MORTGAGES.— *Remedies of Creditors.— Disposition of Proceeds.*—Where chattel mortgages covering a stock of merchandise provided that the mortgagor should apply the proceeds from the sale of goods less the cost and expense of carrying on the business, to the payment of the mortgage debt, and the court found that in the period intervening between the execution of the two mortgages the mortgagor purchased fixtures, but failed to find that they were reasonably necessary, and the terms of the latter mortgage were broad enough to include such fixtures as a part of the mortgaged property, and such fixtures, subject to the mortgage lien have passed into the hands of a trustee for other creditors, substantial justice requires that they be treated as a part of the general fund to be equitably distributed. p. 52.

9. APPEAL. — *Petition for Rehearing. — Questions Reviewable.* — Where on the original presentation of an appeal from the judgment in a suit to foreclose mercantile chattel mortgages, no contention was made that the mortgages did not cover all addi-

tions the mortgagor made to the stock, the court will not, on petition for rehearing, pass upon the proposition that the lien of such mortgages only attached to such additions to the stock as were paid for out of proceeds from sales made. p. 54.

From Putnam Circuit Court; *John M. Rawley,* Judge.

Action by the First National Bank of Greencastle against James E. Vermillion and another. From the judgment rendered, the defendants appeal. *Reversed.*

*Miller, Shirley, Miller & Thompson,* for appellants.

*Thomas T. Moore,* for appellee.

CALDWELL, J.—The complaint is in two paragraphs. By the first appellee seeks to recover on a promissory note in the principal sum of $2,420.23, executed by appellant, Vermillion, January 3, 1908, and to foreclose a chattel mortgage on a stock of goods and store fixtures securing the note. By the second paragraph appellee declares on two promissory notes in the respective sums of $800 and $400 executed by said appellant April 13, 1908, and March 28, 1910, respectively, and seeks to foreclose a chattel mortgage executed by said appellant on the property, on August 4, 1910, to secure the notes.

Appellant Heine was made a defendant by reason of a certain trust created in him in behalf of Vermillion's general creditors under a certain instrument dated August 22, 1910, and hereinafter described. By each paragraph of complaint appellee sought also injunctive relief against said Heine to restrain him from disposing of the property alleged to be in his possession. Each appellant filed a general denial to the complaint. Heine filed also a special answer of four paragraphs. By the second and fourth, facts are alleged to the effect that by the chattel mortgages and the understanding and agreement between appellee and Vermillion, a secret trust was created in favor of the latter, thereby rendering the mortgages void as against the general creditors. By the third and fifth paragraphs, facts are alleged to the effect

that certain funds received by said Vermillion from the sales of portions of the goods should, as against such creditors, equitably be deemed applied on the notes, and that by such application they should be held to be paid. Trial by the court and finding and judgment in favor of appellee for the full amount of the notes, and decreeing the foreclosure of the mortgages as prayed for.

By request of the parties, the court made a special finding of facts and stated conclusions of law thereon. The material facts found are in substance as follows: That about January 1, 1908, appellant, Vermillion, in the settlement of the estate of his deceased father, Isaiah Vermillion, became the owner of a merchandising business, stock of goods, and store fixtures in Greencastle, Indiana; that for many years Isaiah Vermillion had conducted the business at said place, and that from January 1, 1908, to August 22, 1910, appellant, Vermillion, conducted the business as such owner; that in the settlement of the estate appellant, Vermillion, assumed the payment of certain debts thereof, including a promissory note held by appellee in the sum of $2,420.23; that on January 3, 1908, said appellant executed to appellee in payment of the note a promissory note in the sum of $2,420.23 bearing eight per cent interest, running six months, and calling for reasonable attorney's fees, and to secure the payment of the note executed also a chattel mortgage on the stock of goods and fixtures, being the note and mortgage declared on in the first paragraph of complaint; that on April 13, 1908, said appellant executed to appellee a promissory note for $800 bearing eight per cent interest, running ninety days and providing for reasonable attorney's fees, to secure a loan in the sum then made, and that on March 28, 1910, he borrowed an additional sum of $400, and executed to appellee a note therefor in said sum, running ten days, interest and attorney's fees as aforesaid; that said two loans were procured by said appellant on his representation that the respective sums were necessary in

order that he might be enabled to meet competition by increasing his stock of goods; that on August 4, 1910, said appellant executed to appellee a second chattel mortgage on the stock and fixtures to secure the two notes last described, which notes and mortgage are declared on in the second paragraph of complaint; that each of said chattel mortgages was duly recorded within ten days after its execution; that the first chattel mortgage describes the property mortgaged as follows:

> "Said mortgagor's general stock of merchandise, dry goods, cloaks, wraps, suits, notions, fixtures and personal property, and goods, wares and merchandise of every kind and character belonging to or used in any way in connection with the said mortgagor's general dry goods store, situated," etc.;

that the second mortgage repeats the property description and in addition specifically mentions the furniture, show cases, safe, counters and cash register. Each of the mortgages contains the following provisions:

> "It is agreed that this mortgage shall hold and cover all new goods purchased and placed in said stock, to take the place of any goods sold out of said stock under the terms of this mortgage. * * * It is agreed and understood by the parties hereto that said James E. Vermillion shall retain the possession of, and have the use of said property until said note hereby secured becomes due, and if said note is not promptly paid at maturity said First National Bank shall then have the right to take and keep possession of said property wherever it may be found, without any process of law, and the same shall become the absolute property of said First National Bank, and the said James E. Vermillion hereby expressly agrees not to sell or remove said property from the place where it now is without the consent in writing of said First National Bank, nor shall he assign or lease the same without such consent, but it is agreed, however, that said mortgagor may sell such goods in the usual course of trade or business upon the express condition that he shall account to said bank for said sales and that after deducting from the gross amount thereof the costs and expenses of making such

sales, the residue thereof shall be applied to the debt hereby secured. If in the course of the business of selling such stock to provide funds to pay said debt hereby secured, it shall be necessary in order to keep up the stock and sell other goods that new goods shall be bought to fill up the stock and supply broken lines, said mortgagor with the consent of said bank may invest such of the proceeds as may be agreed upon in new goods to fill up the broken lines, and in such case, it is agreed that new goods shall be paid for and shall take the place of the goods so sold, and the said goods so purchased shall pass under the lien of this mortgage, and be subject to sale to satisfy the same in like manner as the goods so sold.''

There is a further provision to the effect that if said property shall come into the hands of any assignee or trustee, etc., to be sold, the mortgagee may take possession of it, and sell at public or private sale on notice.

The court further finds that appellant, Vermillion, paid no part of the sum due on the notes except the interest; that after the execution of the first mortgage, he continued to carry on the business with the knowledge and consent of the mortgagee, selling the mortgaged goods in regular course, buying new goods with a part of the proceeds, and adding them to the stock, and that he so continued up to August 22, 1910; that during that time, said appellant had no means of support for himself and family other than what he derived from the mortgaged goods and the proceeds of the sale thereof; that within that time he used of the goods and of the proceeds thereof, for the maintenance of himself and family the following amounts: in 1908, $1,766.43; in 1909, $1,250.31; in 1910, up to August 22, $864.59, total $3,881.33; that after the execution of the second mortgage, on August 4, 1910, up to August 22, 1910, Vermillion received in cash from the sale of goods $979.24; that he paid for expenses within the time $211.78; that he used in the support of himself and family $63.70; that within the entire period, he expended of the proceeds in the purchase of new fixtures which he placed in the store, and used in connection

with such business $280; that during the time from January
3, 1908, to August 22, 1910, said appellant, with the knowl-
edge and consent of appellee, sold goods on credit, and that
on the latter date, there was due him from divers persons
for mortgaged goods sold on credit accounts aggregating
$2,400; that the net proceeds of the sales of the goods, ex-
cept the amounts used by appellant Vermillion, for support
as aforesaid, and except also the sum of $280 invested in
fixtures, were with the knowledge and consent of appellee
reinvested in goods which were added to the stock to take
the place of goods sold; that appellee had no knowledge that
any part of the net proceeds was used for any purpose other
than to buy new goods; that the mortgages cover $759.09
worth of fixtures that have not been sold or changed since
the execution of the first mortgage; that there was no agree-
ment or understanding between appellee and Vermillion that
any part of the proceeds of the sale of the goods should
be used or applied by Vermillion in the support of himself
or family, and that such use of such proceeds was without
the knowledge or consent of appellee; that during the entire
time from January 3, 1908, to August 22, 1910, appellant,
Vermillion, worked in the store as a salesman, and that his
services were worth $100 per month; that during the greater
part of said time Vermillion's wife also worked in the store
as clerk, and that neither received anything for their serv-
ices, except the amounts heretofore set out in this finding;
that at various times between January 3, 1908, and August
22, 1910, appellee demanded payment of the notes, but that
at each of such times Vermillion replied to appellee that
he was reinvesting the net proceeds of sales in new goods
to replenish the stock, and that unless he did so he could
not meet competition, and that the stock was steadily in-
creasing in value; that appellee believed the representations
and by reason thereof required said appellant to pay only
the interest on the notes; that on August 22, 1910, appel-
lant, Vermillion, being indebted to various persons in the

aggregate amount of about $7,000 for goods bought and added to said stock, executed to his coappellant, Heine, a writing by which he transferred to Heine the entire stock and all the fixtures, and all accounts due him growing out of the business; that Heine thereupon took possession of the business and of the property under the writing, and from that time until the time of the trial operated the store. The writing provides in substance that, by it, Vermillion transfers all the property to Heine in trust for appellee and twenty-eight other persons, firms and corporations who were creditors of Vermillion, or for so many of them as should accept the terms of the trust; the writing authorized Heine to operate the store and to sell goods in regular course, and to buy such goods as might be needed, and that the net proceeds after paying expenses of the business and of the trust, should be applied *pro rata* on the claims of the beneficiaries of the trust. It gives to the trustee discretionary powers to sell all the property as a whole at public or private sale, the proceeds to be applied as aforesaid, and the surplus, if any, to be paid to Vermillion.

The court further finds that the accounts aggregating $2,400 went into the possession of the trustee, and that in February, 1911, he held the following: Unsold goods of the value of $13,000; cash on deposit $2,800; accounts aggregating $1,700 to $1,800; fixtures of the value of $759.09. The court found due on said notes sued on $3,899.39, and that reasonable fees for appellee's attorney was $152, total $4,051.39. The conclusions of law are in effect as follows: (1) that the mortgages and notes sued on are valid, and that the mortgages are a lien on the property therein described, and that appellee is entitled to a foreclosure of the mortgages; (2) that appellee is entitled to recover on the notes and mortgages the sum of $4,051.39, and to have the mortgaged property sold to pay this sum. The court entered judgment on the findings and conclusions of law against appellant, Vermillion, for the sum of $4,051.39, and

costs, and decreed the foreclosure of the mortgages against both appellants, and a sale of the mortgaged property, and the application of the proceeds, including the cash on hand, to the payment of the judgment and costs, the overplus, if any, to remain subject to the further order of the court.

Appellants separately challenge the sufficiency of the evidence to sustain the decision, and challenge also the correctness of each conclusion of law. It appears from the record that there is substantial evidence sustaining the finding in every material respect. It is true that there is considerable conflict in the oral testimony, but under such circumstances, the finding being supported as indicated, we can not weigh the evidence. *Jones* v. *Luddington* (1913), 180 Ind. 33, 101 N. E. 483; *Seybold* v. *Rehwald* (1912), 177 Ind. 301, 95 N. E. 235; *First Nat. Bank* v. *New* (1896), 146 Ind. 411, 45 N. E. 597. We, therefore, proceed to determine the correctness of the conclusions of law.

Here two questions become important. (1) Does the finding show that the mortgages were made and accepted with the intent to hinder, delay or defraud Vermillion's creditors? If so, they must be held to be "void as to the persons sought to be defrauded". §7479 Burns 1914, §4920 R. S. 1881. (2) Does such finding show the creation and existence of a secret trust for the use of appellant, Vermillion? If so, said mortgages are void as against Vermillion's creditors, existing or subsequent. §7480 Burns 1914, §4921 R. S. 1881.

The provisions of the mortgages together with the extraneous facts are covered by the finding. If from a consideration of the provisions of the mortgages, and the terms of any attending or subsequent agreement or understanding, as shown by the finding, it can not be said that the parties were actuated by any other purpose than to secure, and procure the payment of appellee's claims, and if it does not appear that the conduct of the parties was out of harmony with such purpose, then such mortgages must be held valid, even though their existence may have

hindered or delayed other creditors in the collection of their claims. The hindering and delaying of the creditors here will not avoid the mortgage. To have such effect, such hindering and delaying must have resulted from a fraudulent intent of the parties to the instrument. But if it should be determined from the finding that the mortgages were executed and accepted, and held merely as a shield to ward off other creditors from Vermillion's property, while he retained it in his own possession with power to sell it for his own use and benefit, and apply the proceeds as he might choose, then the mortgages must be held to be fraudulent and void. There being no question respecting the validity of the debts represented by the notes, then if the mortgages were given and accepted and held pursuant to an honest purpose to secure the notes, and not otherwise, they are not void. *Meyer, etc., Co.* v. *Shenkberg Co.* (1899), 11 S. Dak. 620, 89 N. W. 126; *Red River, etc., Bank* v. *Barnes* (1899), 8 N. Dak. 432, 79 N. W. 880.

The mortgages provide that the mortgagor may retain possession of the mortgaged property and sell the mortgaged goods in the usual course of trade or business, and 3. that he shall account to the mortgagee for such sales, and that after deducting from the gross proceeds thereof, the cost and expenses of making such sales, the residue shall be applied on the debts secured. It is provided also that a sufficient amount of such proceeds may be invested in new goods in order that the stock may be kept in salable condition, and that the lien of such mortgages shall extend to the goods so purchased. The mortgages are not invalidated by such provisions. *Fisher* v. *Syfers* (1887), 109 Ind. 514, 10 N. E. 306; *Burford* v. *First Nat. Bank* (1903), 30 Ind. App. 384, 66 N. E. 78; *Hamrick* v. *Hoover* (1908), 41 Ind. App. 411, 84 N. E. 28. But the provisions of the mortgages should be considered in connection with anything disclosed by the finding respecting extraneous agreements or understandings between the parties

to said instruments. It is provided by statute, as we
4. have indicated, that a conveyance or assignment of
goods, etc., made or suffered with the intent to hinder,
delay or defraud creditors, or other persons, of their lawful
damages shall be void as to the persons sought to be de-
frauded. §7479 Burns 1914, *supra*. Under this statute,
fraudulent intent is a question of fact. §7483 Burns 1914,
§4924 R. S. 1881. While such fraudulent intent may be in-
ferred from facts and circumstances proven, yet the court
or jury trying the issue must draw the inference, and find
the existence of the ultimate fact in order that it may be
said that fraudulent intent, as such ultimate fact, is estab-
lished. Where, as here, there is a special finding of the
facts, it is not sufficient to state therein the evidence or in-
dicia of fraud, or the facts from which fraud may be in-
ferred, but the ultimate fact of fraudulent intent must be
stated in the finding in order that relief may be granted
under an appeal to said statute. The finding does not con-
tain such ultimate fact. The mortgages cannot, therefore,
be held void under said section. Even were the court in its
capacity as the tryer of the issue of law permitted to draw
such inference from facts found, such facts found would
not justify such inference in this case. *Stout* v. *Price* (1900),
24 Ind. App. 360, 55 N. E. 964, 56 N. E. 857; *Fulp* v.
*Beaver* (1894), 136 Ind. 319, 36 N. E. 250; *First Nat. Bank*
v. *Dovetail Body, etc., Co.* (1896), 143 Ind. 550, 41 N. E.
370, 52 Am. St. 435; *Morgan* v. *Worden* (1892), 145 Ind.
600, 32 N. E. 783; *Fletcher* v. *Marlin* (1890), 126 Ind. 55,
25 N. E. 886. But, as we have also indicated, it is
5. provided by statute that transfers or assignments of
goods, etc., made in trust for the use of the person
making the same shall be void as against creditors existing
or subsequent of such person. §7480 Burns 1914, *supra*.
Under this statute it is held that the existence of a trust
must be found as a fact, and that being so found, the law
draws the inference of fraud. The finding of the existence

of the trust leads with certainty to the conclusion that the transfer or assignment is void by the terms of the statute. *Hamrick* v. *Hoover, supra; Stout* v. *Price, supra.* The mortgages here are valid on their face. The creation or existence of a secret trust for the use of the mortgagor can not be deduced from their terms. The court did not find the existence of such a trust. Conceding, however, that the existence of such a trust might be inferred from facts found which compel such an inference, then if it should appear that notwithstanding the provisions of the mortgages, there existed a secret agreement, or an implied understanding, or that such an agreement was subsequently made, or that such an understanding arose, that the mortgagor was to be permitted to use the proceeds of the sale of the goods, or any substantial part thereof, for his own use and benefit, and as he might choose, and that he was not to be required to account for such proceeds, or apply them on the debts described in the mortgages, such facts would require an inference of the existence of such a trust. *New* v. *Sailors* (1888), 114 Ind. 407, 16 N. E. 609, 5 Am. St. 632; *Stout* v. *Price, supra; Hamrick* v. *Hoover, supra; Mayer* v. *Feig* (1888), 114 Ind. 577, 17 N. E. 159. The court here finds neither the existence of such a trust, nor the facts from which it must be inferred. On this subject, the court finds in substance that the debts secured were *bona fide;* that appellee frequently insisted on payment; that there was no understanding or agreement that Vermillion should use any of the proceeds for purposes of his own, and that such use on his part of such proceeds was without the knowledge or consent of appellee, and that appellee had no knowledge that any part of the net proceeds of the sale of said goods was not reinvested in new goods to take the place of those sold. The finding then in the place of sustaining the theory of a secret trust, when considered with the provisions of the mortgages, rebuts the existence of any such trust. The court did not err in its conclusion of law that said mort-

gages are valid. *New* v. *Sailors, supra; Mayer* v. *Feig, supra; Stout* v. *Price, supra.*

The mortgages being valid, we shall proceed to determine whether any part of the proceeds of the sale of goods should be treated as applied as a credit on the debts

6. secured by the mortgages as against appellant, Heine, and the creditors represented by him. It is not contended that such part of said proceeds as was reinvested in goods bought and added to the stock should be so applied. Moreover, it seems to be conceded that if said mortgages are valid, such goods when added to the stock became subject to the lien of the mortgages, under the circumstances presented here. For the purposes of this decision, we shall treat such conceded matter as correct. Appellants contend, however, that if the mortgages are held to be valid, all sums expended by Vermillion in support of himself and family should, as against Heine, as such trustee, be so applied. Like contention is made respecting the sum invested in fixtures. ''Until the contrary appears, it will be presumed that a mortgagor who is permitted to retain possession of and sell mortgaged chattels does so under an agreement to account as the agent of the mortgagee, and the proceeds will be regarded as applied to the liquidation of the mortgage debt, whether they have been actually paid over or not.'' *New* v. *Sailors, supra,* 412.

In a case where a mortgage of a stock of goods contains substantially the same provisions as to possession, sale and application of the proceeds as the mortgages here, it was said: ''When such an agreement has been entered into, and the mortgagor fails, either in whole or in part, to apply the proceeds accordingly, the law will make the application, when necessary for the protection of the interest of other creditors.'' *Mayer* v. *Feig, supra.* See, also, *Burford* v. *First Nat. Bank, supra.* It will be observed that were not such a presumption indulged to the effect that there was an agreement for the application of the proceeds of sale on

the mortgage debt as aforesaid, in the absence of any showing on the subject of such an agreement, or if effect were not given to such an agreement, if made, any such chattel mortgage containing such a power of sale would of necessity be held to create a trust for the use of the mortgagor, and consequently be void, as against creditors injuriously affected thereby. When, as here, the mortgage includes such an agreement among its provisions, it is only by giving effect to such agreement, by the application of the proceeds, as per the terms thereof, that courts are warranted in holding such a mortgage valid, as against such creditors. On this theory, we proceed to determine the rights of the parties.

So far as is material here, the finding is in substance as follows: The amount of the notes including attorney's fees is $4,051.39. Appellant Vermillion used of the goods and proceeds of the sale thereof, in the support of himself and family $3,881.33, and in the purchase of fixtures which were placed and remained in the store $280. The balance of the net proceeds, after deducting ordinary operating expenses, was used in purchasing new goods, which were added to the stock. Each of the mortgages contains the provision that after deducting from the gross amount of such proceeds, "the cost and expenses of making such sales, the residue thereof shall be applied on the debt hereby secured". That appellant Vermillion from January 3, 1908, to August 22, 1910, worked in the store as a salesman and gave all his time to the business, and that his services were reasonably worth $100 per month; that his wife worked in the store during the greater part of the time; that neither of them received anything for their services except the amounts heretofore set out in this finding, referring presumably to said sum taken out for support. There is no finding of the value of the wife's services or of the value of the joint services, as compared with the amount so taken out for support.

It is apparent that the amounts so used by appellant

Vermillion for support must as against appellant Heine be applied as a credit on the notes.  The question of whether there shall first be deducted from said sum so used an amount representing the value of Vermillion's services is more difficult.  By calculation the value of the services for the time named is $3,163.33.  If such deduction is made, it can be only on the theory that the value of said appellant's services is legitimately a part of the cost and expense of making the sales.  Said appellant by the terms of the mortgage did not bind himself to participate actively or personally in the selling of the goods.  There might be a case where the mortgagor would be physically or otherwise unable to do so.  Some such a situation might have arisen here.  In either of such cases, should such a mortgagor procure some other person to perform the services which otherwise he would have performed personally, we assume that the reasonable salary of such other person would be a part of the legitimate expenses of the sale.  It may be said that in making such sales, the mortgagor was acting for himself, and in his own interest.  In a sense this is true, but the theory by which a mortgage with such an agreement is upheld is that the entire arrangement is for the benefit of the mortgagee.  It is his debt that is secured and that is to be paid, and without such arrangement, the entire scheme is void.  In the equitable solution of a situation such as is presented here, the courts either assume that the mortgagor in making such sales is acting as agent for the mortgagee or treat him as such agent.  The mortgagor is merely one of the instrumentalities used by the mortgagee in collecting his debt by the sale of the goods.  He is one of such instrumentalities just as the use of a storeroom, advertising, etc., are instrumentalities.  When the time for adjusting the rights of all the parties has arrived, the value of the services of the mortgagor, as such agent, has become a part of the matter to be adjusted, and has entered into the value

of the property to be. distributed. The arrangment being valid is presumed to be beneficial to all persons interested in such distribution. The value of such services has contributed to and enhanced such benefits along with whatever else has entered into the conduct of the business. In this case the value of Vermillion's services contributed to the creating of the status as it existed when the rights of other creditors attached through appellant Heine. We are of the opinion that the value of such services should be deducted as indicated. The fact that said appellant had no other means of support confirms us in our conclusion. Such being the case, he could not have carried out such an arrangement, unless the business he was conducting in some manner afforded him means of support. The law looks with favor upon such an arrangement as was made here, if fairly made with the purpose of honestly carrying it out. It would be unreasonable to say that such favor is limited to mortgagors who are affluent. If the law denies the right of a mortgagor under circumstances presented here to receive the reasonable value of his services, it would render impossible of performance an arrangement which it fully countenances. We conclude that the value of Vermillion's services, as found by the court to be $3,163.33, should be deducted from the sum of $3,881.33, used for support, and that only the residue thereof, $718 should be applied as a credit on the mortgage debt as against appellant Heine. Nothing

7. can be allowed for the wife's services, as the court fixed no value on them. Under circumstances very similar to those presented here, the value of such

6. services were allowed in *Bliss & Wood* v. *Couch* (1891), 46 Kan. 400, 26 Pac. 706, the court saying: "The mortgagor, if he may keep the possession, may as well make the sales as a stranger. He acts in that respect as a *quasi* agent, at least, of the mortgagee, and as such agent and salesman is entitled to compensation for his services." Such case is cited with approval in *Gleason* v. *Wilson*

(1892), 48 Kan. 500, 29 Pac. 698, but is weakened somewhat by reason of the facts in *Frankhouser* v. *Ellett* (1879), 22 Kan. 127, 147, 31 Am. Rep. 171, upon which it is based. See, also, *Noyes* v. *Ross* (1899), 23 Mont. 425, 59 Pac. 367, 75 Am. St. 543, 47 L. R. A. 400.

There is a line of cases, of which *Noyes* v. *Ross, supra,* is in one respect a sample, by which under circumstances presented here, chattel mortgages providing that the reasonable living expenses of the mortgagor may be deducted before applying the proceeds of the sales on the debts secured, are held to be valid. We do not approve the doctrine of such cases, however. If a sum allowed a mortgagor is measured by the value of services rendered by him, it can not be said that the arrangement is for his benefit, since he gives full return for all that he receives. His living expenses, however, would not bear any ascertained relation to the value of the services rendered, and hence in such a case, it might well be said that an arrangement with such an element is for his benefit, and that a mortgage containing a provision to that effect is void, in that it creates a trust for his use.

Our attention is called to the question decided in *Stout* v. *Price, supra.* In that case, there was apparently an extraneous agreement, by which the mortgagor was to be permitted to retain from the stock of goods and the proceeds of the sale thereof an amount sufficient to support himself and family, not exceeding, however, ten dollars per week, which amount so retained was not to be applied on the mortgage debt, and was not so applied. The mortgage was held void as against creditors, on the ground that it created a trust for the use of the mortgagor. That case is not out of harmony with our conclusion. The amount to be retained there was based on living expenses, and regardless of the value of any services rendered. Our attention is also called to *Dice* v. *Irvin* (1887), 110 Ind. 561, 11 N. E. 488. There Dice executed to his wife a chattel mortgage on certain

stock, including twenty-two fat hogs. Subsequently the wife permitted the husband to slaughter the hogs and dispose of them in the support of their common family. The question was as to whether such subsequent fact rendered the mortgage void. The holding is that the mortgage was not thereby invalidated. The question of whether the wife would have been charged with the value of the hogs as against creditors whose rights intervened was not presented or decided.

We have yet to consider whether the sum of $280 expended for new fixtures should be applied as a credit on said mortgage debts. The finding is that said mortgagor invested that amount of the proceeds of the sales in fixtures which were placed in the store and used in carrying on the business. By the specific facts found respecting the receipts and expenditures during the period after the execution of the second mortgage, to wit, after August 4, 1910, it sufficiently appears that such fixtures were in the store at the time of the execution of the second mortgage, which is broad enough in its terms to comprehend such fixtures within its lien. By the terms of the trust instrument under which appellant Heine claims, these fixtures were transferred to him. There is no finding on the subject of whether such fixtures were reasonably necessary in the proper operation of such store. If reasonably necessary, their cost might be claimed as expense and allowable under the terms of the mortgage. If not reasonably necessary, it would seem that by their purchase, appellant Vermillion exceeded his authority under the mortgage, and that the amount should be applied as a credit on the mortgage debt. In any event, should we direct the sum so invested in fixtures to be applied on the mortgage debt, in the interest of appellant Heine, we should be compelled to enforce the lien of appellee's second mortgage against the fixtures. This course would result in the payment to appellee of the net proceeds derived from the sale of the fixtures on foreclosure.

These fixtures, subject to appellee's lien have passed into the hands of Heine by virtue of the trust instrument, and in our judgment, substantial justice may be accomplished by treating them as a part of the general fund to be equitably distributed.

From our conclusions, it is apparent that there must be a reversal, but in our judgment, the rights of the parties may be worked out without a new trial. There is in the hands of appellant Heine a fund composed of the following: The residue of the goods and fixtures, accounts including the uncollected portion of the accounts resulting from the business before the execution of the trust instrument, and thereby transferred to him, aggregating $2,400 cash and accounts accumulated by him under the trust instrument. The cause is reversed at the cost of appellee, and the court is directed to restate its conclusions of law to the following effect, and decree accordingly: that the mortgages and notes are valid, and that the mortgages are a lien on the stock of goods and fixtures, and that appellee is entitled to a foreclosure of the mortgage; that appellee is entitled to recover as against appellant Vermillion the sum of $4,051.39; that as against appellant Heine there should be applied on the sum due on the notes a credit in the sum of $718, leaving the balance thereof as against appellant Heine $3,333.39; that appellee is entitled to a foreclosure of the mortgage and a sale of the mortgaged property; that a fund should be created from the proceeds of the sale, cash on hands and accounts collected, and from this sum there should be paid to appellee the sum of $3,333.39, with interest from the rendition of the judgment appealed from, next to the payment of the claims of creditors represented by appellant Heine, next to the payment of the sum of $718 due appellee, with interest as aforesaid, the overplus, if any, to be paid into court, subject to the court's further order.

Judgment reversed.

Vermillion *v.* First Nat. Bank—59 Ind. App. 35.

## ON PETITION FOR REHEARING.

CALDWELL, P. J.—The petition for a rehearing contains a specification in substance that the court erred in its original opinion in failing to give any weight to the provision of the mortgage, to the effect that new goods purchased and added to the stock to fill up broken lines should be paid for out of the proceeds of sales, and that goods so purchased and paid for should pass under the lien of the mortgages. It is now argued that as determined from such provision only goods so purchased and paid for became subject to the mortgage lien, and that goods purchased and not paid for should be held to be available in the creation of a fund for the payment of the claims of the general creditors. Respecting such specification and argument, it may be said that in the original presentation of this case in this court appellants made no such contention. Neither in the original nor in the reply brief was any point directed to the proposition that only new goods that had been paid for passed under the lien of the mortgage. As stated in the original opinion, the case was apparently presented for our consideration on the theory that the mortgage, if valid, covered additions to the stock. Under such circumstances, as has many times been determined by both the Supreme Court and this court, we are not required to consider such proposition presented to us, as it is, for the first time on a petition for rehearing.

In other respects we have carefully reconsidered the case, and while we recognize that it presents a number of questions not free from difficulty, we find no occasion to depart from our disposition of it as contained in the original opinion. The petition for rehearing is overruled.

NOTE.—Reported in 105 N. E. 530; 108 N. E. 370. As to the validity of a chattel mortgage of stock of merchandise as affected by a provision or agreement giving the mortgagor the possession with power of sale, see 18 L. R. A. 604; 36 L. R. A. (N. S.) 1181. See, also, under (1) 3 Cyc. 360; (2) 6 Cyc. 1097; (3, 6, 7, 8) 6 Cyc. 1107; (4) 6 Cyc. 1099; (5) 20 Cyc. 805, 557; 6 Cyc. 1107; (9) 3 Cyc. 214.