GENERAL HIGHWAYS SYSTEM, INCORPORATED, *v.* THOMPSON ET AL.

[No. 12,654. Filed February 24, 1927. Rehearing denied April 29, 1927. Transfer denied November 14, 1928.]

180

*Meyer, Fine & Mitchell* and *Paul H. Schmidt,* for appellant.

*Nat H. Youngblood,* for appellee.

NICHOLS, J.—Action by appellant by an intervening petition, as a general creditor of Walter J. Stoeckler, for whose personal property a receiver had been appointed. Appellant, in said intervening petition, objects to the allowance, as a preferred claim, of a chattel mortgage on Stoeckler's merchandise, which mortgage he had executed and delivered to appellee Thompson.

Appellant's intervening petitions in two paragraphs alleged, in substance, that the mortgage of appellee Thompson was void and of no effect as against general creditors. The mortgage was presented to the court thereby for determination as to its legal effect. The court overruled the first paragraph of appellant's intervening petition and assigned the second paragraph for trial.

The cause was tried by the court, who declared the chattel mortgage to be a valid and subsisting lien on all property mentioned therein, as well as upon property subsequently acquired by the mortgagor, and that the amount of appellee Thompson's claim be preferred over all claims except taxes and costs of administration. Judgment was rendered accordingly, from which this appeal, appellant assigning as error that the court erred in overruling appellant's first paragraph of intervening petition and in overruling appellant's motion for a new

trial. The facts averred and proved, so far as involved, are that Stoeckler, on or about March 1, 1925, and for several months subsequently, was engaged in the retail auto accessory business in the city of Evansville, Indiana.

On March 9, 1925, said Stoeckler executed and delivered to appellee Thompson his promissory note for the principal sum of $3,500, the amount of which said Stoeckler subsequently reduced by payments during the three succeeding months to $2,300. To secure the payment of said note, the said Stoeckler executed and delivered to appellee Thompson, on March 9, 1925, a chattel mortgage, which mortgage was recorded March 9, 1925. One of the covenants of said mortgage provided that the mortgagor agreed to deposit in the Mercantile-Commercial Bank of Evansville, Indiana, a sum equal to one-half of his daily receipts, to be credited on the note secured by said mortgage, which money was to be derived from mortgagor's business where the property mortgaged was located. Said mortgage further provided that the mortgagor was to remain in possession of the property mortgaged and sell the same, "in the regular course of retail and wholesale," and replenish the stock from time to time.

From March 9, 1925, until June 24, 1925, Stoeckler deposited to his account in the Mercantile-Commercial Bank $1,390, and in the Citizens National Bank of Evansville, Indiana, from March 9, 1925, to July 10, 1925, $9,337.42.

All of the money evidenced by the foregoing deposits was derived by Stoeckler from the conduct of his business, except $3,255, which was borrowed money from appellee Thompson. In addition thereto, Stoeckler used, for his personal living expenses, $200 per month, which was not deposited in a bank. Also, in addition to money deposited in bank and living expenses, Stoeckler paid for salaries $60 per week, and for C. O. D. express shipments $500.

On July 13, 1925, appellee Thompson filed his complaint in the Vanderburgh Probate Court, asking for the foreclosure of said mortgage and for the appointment of a receiver for the property described in the mortgage, which, as aforesaid, consisted of a stock of auto-accessory merchandise, and for a restraining order. Said complaint alleged a balance due and unpaid on the mortgage of $2,300.

Appellee Thompson has filed his motion to dismiss the appeal herein, the ruling on which was deferred until final hearing. Conceding, without deciding, that such motion is before the court upon sufficient notice, we hold the judgment from which the appeal was taken was a final judgment. When the trial court held that the mortgage involved was valid, it determined the issue presented by appellant's intervening petition against appellant. The only questions that appellant sought to present by its petition were as to the validity of the mortgage, and, if valid, whether under the law it had been paid and satisfied as to the general creditors. These were finally determined. The motion to dismiss is overruled.

We do not consider the assigned error of overruling the first paragraph of appellant's intervening petition, remarking only that such procedure seems questionable to the court. We confine ourselves to the second error assigned, that of the court's action in overruling appellant's motion for a new trial, which presents the substantial questions involved. Under this assigned error, we shall consider whether the mortgage is valid, and, if so, whether it had been paid and satisfied.

We consider first the question as to the validity of the mortgage. It is expressly provided therein that the property mortgaged, which was a stock of auto-accessory merchandise, was to remain in the possession of the mortgagor, with the power expressly given to him to sell

the same in the regular course of retail and wholesale, the mortgagor expressly agreeing to deposit in the Mercantile-Commercial Bank in Evansville, Indiana, a sum equal to one-half of his daily receipts, the same to be credited on the note secured by the mortgage, which said money was to be derived from his business operated with such stock of merchandise. Thus it appears that the mortgagor was required to account for but one-half of the proceeds of his sales, the mortgage being silent as to the disposition of the other half. It is true that the mortgage provided that the mortgagor should keep the mortgaged property in good condition and should replenish the stock from time to time, but there was nothing therein that required the mortgagor to use the other half of the proceeds of the business for that purpose, or for any other purpose, and, therefore, such half was left to the absolute disposal of the mortgagor in such manner as he might see fit to use it. There was thus a reservation, in effect, of a substantial part of the proceeds of the sales for the mortgagor's own use and benefit. That he did use a part of the proceeds for his own use and benefit is evidenced by the undisputed fact that he used $200 per month for living expenses and $60 per week for operating expenses and $500 for express charges, etc. There was no provision in the mortgage for any such use thereof.

The case of *Blakeslee* v. *Rossman* (1877), 43 Wis. 116, is, in its facts, very much like the instant case. The court there held the mortgage void in law because of the fact that the mortgagor was required to account for one-half the proceeds, the mortgage being silent as to the disposition of the other half, it being left to the absolute disposal of the mortgagor for his own use. The court says: "It is vain for the respondent to say that the mortgage contains no express agreement for the mortgagor's use of half of the proceeds. The silence of the mortgage gives him the right as effectually as express

agreement could. Having applied one-half to the use of the mortgagees and made no provision for the other, the mortgage leaves that absolutely with the mortgagor. He might hold it in money or land it, or invest it at his pleasure, without breach of contract with the mortgagees, who take no right under the mortgage to it or over it. He made the mortgage for payment of one-half only of the proceeds while he should remain in possession. He retained the other half as effectually as he would have retained half of the goods, had he mortgaged but half.

"It is quite unnecessary to consider what may be the rule elsewhere, though it is very generally, if not universally, the same as here. The validity of such a mortgage is not an open question in this state. A chattel mortgage permitting the mortgagor to remain in possession to sell and apply the proceeds or any part of them to his own use is fraudulent and void in law as against creditors."

Again, the court says: "The license given to the mortgagor to retain half the proceeds and use them at his pleasure makes the written contract of the parties fraudulent and void in law as against creditors; absolutely void as to them, beyond all aid from extrinsic facts."

In the well-considered case of *Stout* v. *Price* (1900), 24 Ind. App. 360, 55 N. E. 964, it appeared that the mortgagor kept possession of the mortgaged property, and, with the mortgagee's knowledge and consent, continued to sell the goods at retail and retained enough of the goods and money from the stock to support himself and family, the amount so retained not exceeding $10 per week, which amount was not to be applied as a credit on the mortgage debt. It was there held that where a mortgagor executed a chattel mortgage on a stock of goods and continued to sell the goods at retail, retaining enough therefrom to support himself and

family with the knowledge and consent of the mortgagee, which amount so used was not applied as a credit on the mortgage debt, a secret trust was thereby created which rendered the mortgage void within the meaning of §6646 Burns 1894, §8065 Burns 1926, as against creditors.

In *New* v. *Sailors* (1888), 114 Ind. 407, 16 N. E. 609, 5 Am. St. 632, it was held that, although a mortgage may be valid on its face, if it appears that there was a secret agreement or implied understanding that the mortgagor might continue to sell the property as his own with the right to support himself and family from the proceeds of the sale, without accounting therefor, such arrangement or understanding is, in effect, a secret trust for the benefit of the mortgagor and is void as to creditors.

Each of the cases above referred to cites numerous authorities to sustain the holdings therein, and nothing can be gained by again citing them here. It thus appears from the authorities, and as an established principle of law, that the mortgage here involved was void as to general creditors, for permitting, as it did, the mortgagor to remain in possession of the stock of merchandise and to make sales therefrom, without requiring him to account for but one-half of the proceeds of the sales therefrom, and for the further reason that, with the knowledge and implied consent of the mortgagee, the mortgagor was permitted to withdraw from the proceeds of the sale a sum of money, indefinite as to amount, for his support and for the operating expenses of the business.

But if the chattel mortgage were treated as valid, appellee would not be helped thereby. It would then be the duty of the court to enforce it according to its terms. It is not the duty of the court to make contracts for parties, but to enforce them as made. In the chattel mortgage here involved, there

was an express agreement to deposit half of the proceeds of the business in bank to be applied on the payment of the note secured by the mortgage. As was held in *Stout* v. *Price, supra,* if the mortgagor fails to apply the proceeds of the business in discharge of the debt according to the agreement, then the law will make the application to protect the other creditors. In the Stout case, the rule is thus stated: "And where a mortgagor retains possession of mortgaged chattels, and continues to sell them, it will be presumed, until the contrary is shown, that he does so under an agreement to account as the mortgagee's agent, and the proceeds will be regarded as applied to the mortgage debt, whether they have been paid over or not." Of course, in this case there is no need of a presumption, for it was expressly agreed by the terms of the mortgage, that one-half of the proceeds should be applied to the payment of the debt.

The undisputed evidence shows that from March 9, 1925 to July 10, 1925, Stoeckler, the mortgagor, deposited in the Citizens National Bank $9,337.42. This included $3,500 which was borrowed from appellee Thompson and deposited in that bank, leaving a balance of $5,837.42, and $1,390 was deposited in the Mercantile-Commercial Bank to apply on the mortgage, making a total of $7,227.42 daily receipts from the business, one-half of which, or $3,613.71, should have been applied on the mortgage debt under the agreement, and which would have fully discharged it. And this does not include about $1,800 used by the mortgagor for living expenses, operating expenses, express charges, etc., the use of which was not in any way authorized by the mortgage. It thus appears that even if the mortgage had been valid, under the rule of law above set out, it would be deemed fully paid and satisfied as to general creditors.

Having determined the substantial questions presented

by this appeal, we do not consider other questions going chiefly to the procedure in the lower court, and which we deem technical rather than substantial.

The judgment is reversed, with instructions to grant a new trial.

Dausman, J., absent.

### ON PETITION FOR REHEARING.

NICHOLS, J.—On petition for rehearing, appellee relies chiefly upon the case of *Vermillion* v. *First Nat. Bank* (1914), 59 Ind. App. 35, 105 N. E. 530, 108 N. E. 350. But the controlling facts involved in that case are so different from the facts here that it has but little force in determining the issues herein. The mortgage there involved provided that the mortgagor might sell the goods in the usual course of trade or business, upon the express condition that he should account to the mortgagee for said sales, deducting from the gross amount thereof the expenses of making such sales, the residue thereof to be applied to the debt secured. In the instant case, however, the mortgagor was required to deposit but one-half of his daily receipts to be credited on the notes secured by the mortgage, such money to be derived from the business where the property mortgaged was located. There was no provision whatever as to what should become of the other half of the daily receipts, and the mortgagor was left free to use the same as he pleased. He was not required in any way to account therefor. In the Vermillion case, the court says: "If it should appear that . . . the mortgagor was to be permitted to use the proceeds of the sale of the goods, or any substantial part thereof, for his own use and benefit, and as he might choose, and that he was not to be required to account for such proceeds, or apply them on the debts described in the mortgages, such facts would

require an inference of an existence of such a trust." In this case, the mortgagor was permitted to use proceeds of the sale of half of the goods as he chose, which was certainly a substantial part thereof. The Vermillion case also states as a rule of law that, "until the contrary appears, it will be presumed that a mortgagor who is permitted to retain possession of and sell mortgaged chattels does so under an agreement to account as the agent of the mortgagee, and the proceeds will be regarded as applied to the liquidation of the mortgaged debt, whether they have been actually paid over or not," citing *New* v. *Sailors* (1888), 114 Ind. 407, 16 N. E. 609. In the instant case, there was an express provision in the mortgage that one-half of the daily receipts should be deposited in the bank to be applied upon the mortgage debt, and, as stated in the original opinion, had such application been made, even after deducting $200 per month for living expenses, $60 per week for salaries, and C. O. D. express shipments $500, the debt would have been fully paid. As stated in the Vermillion case, the proceeds will be regarded as applied to the liquidation of the mortgage debt, and, so applied, the debt was fully discharged.

Petition for rehearing denied.

Dausman, J., absent.