Richard D. WAGNER, as Trustee for M. Clune Co., Inc., and Donald L. Adams, as Trustee for George Geary Haughton, Plaintiffs-Appellees,

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 77-1383.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 3, 1977.

Decided March 28, 1978.

pages 27-81 and his remedy appears on pages 77-79.

Before PELL and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.*

PELL, Circuit Judge.

This is an appeal from a district court judgment in which the plaintiffs-appellees recovered from the United States $7,044.14 plus interest and costs, the principal sum being the amount that the Internal Revenue Service had levied upon to satisfy unpaid federal income taxes of George G. Haughton and his wife, Geraldine A. Haughton. At issue on appeal, as in the district court, is whether the Government wrongfully levied on certain trust funds to satisfy the unpaid income taxes of the Haughtons.

The facts relevant to this appeal concern the creation of the trusts upon which the Government levied. Haughton was an employee of M. Clune Company, Inc., a furniture business. He also operated his own business in one of Clune's stores. In 1972, Haughton became indebted to Heller & Company in the amount of $28,000, allegedly acting with the apparent authority of Clune. Heller then filed suit against both Haughton and Clune alleging that Clune was also liable on the debt because Haughton had incurred the debt on behalf of Clune.

On February 20, 1973, Richard Wagner and Donald Adams (trustees-appellees herein but acting then as attorneys for Clune and Haughton) signed a letter agreement acknowledging that the Heller debt must be paid and establishing an arrangement for such payment. This letter agreement provided that Clune would pay $500 of Haughton's monthly wages and commissions directly to Richard Wagner and Donald Adams as trustees respectively for Clune and Haughton. The trustees would deposit the funds in a checking account and periodically make payments from the account to Heller to pay the debt. Heller was not a party to this agreement.

Myron C. Baum, Acting Asst. Atty. Gen., John G. Manning, Atty., Tax Div., Dept. of Justice, Washington, D. C., Virginia Dill McCarty, U. S. Atty., Indianapolis, Ind., for defendant-appellant.

Richard D. Wagner, Indianapolis, Ind., for plaintiffs-appellees.

* Senior District Judge William J. Campbell of the United States District Court for the Northern District of Illinois is sitting by designation.

On January 7, 1974, Haughton and Clune themselves entered into an agreement with similar provisions. In the later agreement, Haughton acknowledged that he was liable for any judgment that Heller might obtain against Clune and agreed to indemnify Clune for any such liability. The appellees-trustees were to deposit in savings accounts all sums held by them as trustees under the previous letter agreement, as well as continuing to deposit subsequent monthly $500 payments from Clune to appellees in the same fashion as under the previous letter agreement so long as Haughton remained Clune's employee. If Heller did obtain a final judgment against Clune, the appellees were to transfer the funds on deposit to Clune to satisfy Haughton's obligation to indemnify Clune, and to pay any balance remaining to Haughton. Eventually, in March 1976, Heller obtained a judgment against Clune which, including interest, was in the amount of some $34,000.

The January 7, 1974, agreement stated that Haughton would file a petition in bankruptcy within three weeks, but that he would not seek to schedule or otherwise discharge his obligation to indemnify Clune in the bankruptcy proceeding. Haughton filed his bankruptcy petition on January 29, 1974.

On April 14, 1973, prior to the 1974 agreement but subsequent to the letter agreement, Haughton and his wife were assessed federal income taxes for 1972 in the amount of $5,137.07. A tax lien on their property attached pursuant to 26 U.S.C. § 6321 on that date.[1] On May 16, 1974, the Government levied on and seized funds in one of the savings accounts opened by appellees subsequent to the January 7, 1974 agreement. The Government levied upon and seized funds in a second similarly opened savings account on July 24, 1975 to further satisfy Haughton's 1972 tax assessment.[2] Similar procedures were repeated with respect to Haughton's 1974 tax assessment. On June 21, 1975, the Haughtons were assessed $4,790.07 for 1974 incomes taxes. A tax lien thus attached on that date. The Government levied upon one of the savings accounts set up pursuant to the January 7, 1974 agreement and seized $3,335.10, the unpaid balance of the 1974 assessment.

Appellees brought suit against the Government to recover the funds levied upon, alleging wrongful levies.[3] The term "wrongful levy" itself is defined in Section 301.7426–1(b)(iv) of the Treasury Regulations on Procedure and Administration (1954 Code), to include (1) a levy made upon property in which the taxpayer has no interest, (2) a levy made upon property with respect to which a person other than the taxpayer is a purchaser against whom the lien in favor of the United States for the unpaid taxes of the taxpayer is invalid under Section 6323 of the Internal Revenue

1. This statute provides:
 If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.
 26 U.S.C. § 6321.

2. The Government's power to levy and seize a taxpayer's property is provided by 26 U.S.C. § 6331 which provides in pertinent part:
 (a) . . . If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax . . . by levy upon all property and rights to property . . . belonging to such person or on which there is a

lien provided in this chapter for the payment of such tax.

 . . . . .

 (b) . . . The term "levy" as used in this title includes the power of distraint and seizure by any means. . . . [A] levy shall extend only to property possessed and obligations existing at the time thereof.

3. The statute authorizing a suit for wrongful levy provides in pertinent part:
 (a)(1) . . . If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.
 26 U.S.C. § 7426.

Code, or (3) a levy that effectively destroys or otherwise irreparably injures the interest of a person other than a taxpayer in the property levied upon when such person's interest is senior to the lien of the United States for unpaid taxes.

■ The Government's first argument in this appeal is that the transfer by Clune of Haughton's wages and commissions into the trust was an invalid assignment of wages under Indiana law, and thus that these funds remained Haughton's property and were subject to a tax levy. The determination of whether a taxpayer has an interest in property is governed by state law. *Aquilano v. United States,* 363 U.S. 509, 513, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). Ind.Code Ann. § 22–2–6–2 (Burns) provides that any assignment of the wages of an employee thereafter made shall not be valid unless specific content and formalistic requirements are met and it is made to pay one of eleven listed purposes such as union dues, premiums on insurance secured by the employer, charitable contributions, etc. The Government argues, but for the first time on this appeal, that the purported assignment of Haughton's future wages was not in compliance with the Indiana statute and therefore invalid. The Government concedes in its reply brief that it had failed to plead or otherwise raise the issue at trial, but argues that it would not be precluded from now raising it because the invalidity of the agreement under the statute is apparent from the face of the agreement. The Government is certainly correct insofar as it is stating that noncompliance with the statute is apparent from the face of the agreement. If for no other reason, the payment purpose does not fall within any of the eleven statutory categories. This, however, is only an initial step in the analysis of the claimed defense.

■ The determination of what questions will be considered and resolved for the first time on appeal is left to the discretion of the court of appeals. *Singleton v. Wulff,*

428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). Our discretion to consider such issues, however, should be exercised only in exceptional cases as where the proper resolution is beyond doubt or where injustice might otherwise result. *Id.* Ordinarily we follow the well-settled general proposition that "a litigant cannot present to this court as a ground for reversal an issue which was not presented to the trial court and which it, therefore, had no opportunity to decide." *Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1333 (7th Cir. 1977), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed. 2d 467 (Nov. 29, 1977); *Desert Palace, Inc. v. Salisbury,* 401 F.2d 320, 324 (7th Cir. 1968). Nevertheless, if the letter agreement, which was signed and became effective before the first tax assessment and which was continued in effect by the 1974 agreement, was absolutely void and a complete nullity, the question might be a close one, particularly as to the amounts paid into the savings accounts subsequent to the first tax assessment.[4] We do not read the Indiana statute, however, as saying that a noncomplying assignment is totally without legal effect.

A predecessor Indiana statute on the subject had apparently prohibited all assignments of future wages, *see International Text-Book Company v. Weissinger,* 160 Ind. 349, 65 N.E. 521 (1902), but the present statute quite obviously indicates that there is nothing inherently wrong with an assignment of such wages in that it specifically permits assignment to eleven categories of recipients. Those which are not included, by statutory definition, "shall not be valid." While there are certainly aspects of public policy in this statute, that policy is not directed at protecting the public at large but more narrowly just the "interest of the wage-earners." *Id.* at 353, 65 N.E. 521. In our opinion, the Indiana courts, under well-established general law would hold that when an action is not "valid," indeed, even when it is statutorily described as being

---

4. With regard to amounts paid, and presumably reducing the ultimate obligations of Haughton, which were paid prior to the first tax

assessment, see *Wells v. Vandalia Railroad Co.,* 56 Ind.App. 211, 103 N.E. 360 (1913).

"void," the proper construction is that the action is "voidable at the option of one of the parties or some one legally interested therein." *Doney v. Laughlin,* 50 Ind.App. 38, 94 N.E. 1027, 1028 (1911). To the same effect and for a scholarly discussion of the general rule of construction, see *Mutual Benefit Life Insurance Co. v. Winne,* 20 Mont. 20, 49 P. 446 (1897). The following words of that court, at 449, are particularly applicable to the present situation:

> Whenever the act done takes effect as to some purposes, and is void as to persons who have an interest in impeaching it, the act is not a nullity, and therefore, in a legal sense, is not utterly void, but merely voidable. Another test of a void act or deed is that every stranger may take advantage of it, but not of a voidable one.

■ Here Haughton could have chosen to impeach his assignment but did not choose to do so. Clune, although a party to the agreement, obviously did not desire to repudiate it, and, indeed, not being one for whose benefit the statute was passed, could not have avoided its obligation under the agreement on the ground that the agreement was a complete nullity. In any event, the Government is certainly the "stranger," and would be without standing to challenge the validity of the assignment. Undoubtedly, a basic purpose of the statute is for the protection of the wage-earner from the claims of creditors, with the option being kept open to that individual to renege at any time on his assignment as to future wages. The legislature would not, it would seem, have in mind that the privilege of revocation would be available for exercise by a second creditor to establish a priority of his claim.

The Government, on the assumption that the assignment was a nullity under the Indiana statute, then argues further that neither the appellees nor Clune were "purchasers" or "holders of a security interest" under 26 U.S.C. § 6323(a) which provides that a tax lien would not be valid against such parties until notice thereof had been filed. Because we are of the opinion that the Government cannot challenge the statutory validity of the assignment, we need not reach this argument.

■ The Government alternatively argues that even if the wages and commissions had been validly assigned to appellees, such assignment would be void as to the Government, a creditor of the taxpayer, under Ind.Code Ann. § 32–2–1–15 (Burns) which provides as follows:

> All deeds of gift, conveyances, transfers, or assignments, verbal or written, of goods, or things in action, made in trust for the use of the person making the same, shall be void as against creditors, existing or subsequent, of such person.

The appellees argue that the Government is barred from raising the issue because it failed to plead it as an affirmative defense under Fed.R.Civ.P. 8(c). However, both parties argued the applicability of the statute in the district court without objection by the appellees that the Government failed to plead it as an affirmative defense. Therefore, under Fed.R.Civ.P. 15(b), the issue was tried by implied consent and should be treated as if it had been raised in the pleadings. The applicability of this statute to void the assignment as to the Government depends on whether the funds in the trusts (savings accounts) were for the use of the taxpayer. If they were, the assignment was void as to the Government and the funds were subject to a tax levy as taxpayer's property. If they were not for the use of the taxpayer, the assignment was valid and the funds were not subject to a tax levy by the Government. Although the parties cited no cases which construed the "for the use of" language of the statute, and although our research revealed no case involving facts identical to those of the instant case, we do note old Indiana case law interpreting the relevant language of the statute in factual contexts sufficiently similar to that of the instant case to persuade us that the funds were not for the use of the taxpayer.

In *Vermillion v. National Bank of Greencastle,* 59 Ind.App. 35, 105 N.E. 530 (1914), the Indiana court construed the "for the use of" language of the statute in the context

of a chattel mortgage arrangement. The mortgagor mortgaged merchandise to secure a note. The mortgages provided that the mortgagor was to retain possession of the mortgaged property and could sell this property in the usual course of business. The proceeds from the sale of this property, however, were to be used to replace the sold inventory or to pay the secured debt, and if used to replace sold inventory, the mortgage was to attach to the replacement inventory. Other general creditors of the mortgagor brought suit to obtain their share of the proceeds of the sale of the mortgagor's inventory. Their theory of recovery was that the proceeds from the sale of the mortgage inventory were held in secret trust for the use of the mortgagor because these proceeds were used to pay the mortgagor's debt. Because the proceeds were in trust for the use of the mortgagor, they argued, the trust was void as to the mortgagor's creditors, and therefore, they should share these proceeds with the mortgagee as general creditors.

The court rejected this interpretation of the "for the use of" language and held that the proceeds were not for the use of the mortgagor. It further outlined a situation in which the statute would properly apply:

> if it should appear that, notwithstanding the provisions of the mortgages, there existed a secret agreement, or an implied understanding, or that such an agreement was subsequently made, or that such an understanding arose, that the mortgagor was to be permitted to use the proceeds of the sale of the goods, or any substantial part thereof, for his own use and benefit, and *as he might choose,* and that he was not to be required to account for such proceeds, or apply them on the debts described in the mortgages, such facts would require an inference of the existence of such a trust.

105 N.E.at 534 [emphasis added].

█ In the instant case, as in *Vermillion,* the relevant funds were to be used to pay the settlor's debts. Here the Government, and in *Vermillion* other general creditors, sought the funds to satisfy their debts. We follow the *Vermillion* decision and find that the trust funds were not for the use of the taxpayer. *See also Goldberg v. Britton,* 119 Ind.App. 90, 84 N.E.2d 201 (1949) (*en banc*); *General Highway System, Inc. v. Thompson,* 88 Ind.App. 179, 155 N.E. 262 (1927) (*en banc*); *Stout v. Price,* 24 Ind.App. 360, 55 N.E. 964 (1900). The transfer of Haughton's wages and commissions into the trusts, therefore, was not void as to the Government and accordingly, the funds were not subject to a tax levy.

█ The Government also argues that Haughton's agreement of January 7, 1974, that he would not schedule or otherwise discharge in bankruptcy his obligation to indemnify Clune was invalid in bankruptcy and did not prevent the obligation from being discharged. The Government's theory, although ambiguous, apparently is that if the obligation to indemnify were discharged, the trust arrangement would have become of no effect, and the pre-bankruptcy tax lien would have attached to Haughton's wages and commissions as superior to the rights of Clune to such property. We reject this argument because we find nothing in the record which establishes that Haughton's obligation to indemnify Clune was, in fact, discharged in bankruptcy. The obligation was not scheduled and there was nothing in the record to indicate that it was discharged as a matter of law. Typically, if a bankrupt fails to schedule a creditor, the result is that any subsequent discharge is inoperative and ineffective as to that creditor. *See* C. Nadler, The Law of Bankruptcy 120 (2d ed. 1972). Furthermore, we note that a discharge does not cancel the obligation; the obligation still exists. A discharge merely disables the creditor from enforcing its claim. *Id.* at 642.

The Government's final argument addresses the tax levies resulting from only the 1972 tax assessment. The Government's tax lien for Haughton's 1972 taxes attached to Haughton's property on April 14, 1973, the date of the assessment. *See* 26 U.S.C. § 6321. This tax lien thus arose before the January 7, 1974, agreement in

which Haughton agreed that Clune was to transfer $500 per month of Haughton's wages and commissions into a trust to indemnify Clune. The Government argues that this tax lien attached to Haughton's rights to future wages and followed that property when Haughton assigned it into the trust pursuant to the January 7, 1974 agreement. We disagree.

 The critical issue was whether Haughton had a sufficient property interest in his future wages and commissions to which a tax lien could attach and follow into the trust. Haughton's future wages and commissions were contingent on his continued employment and thus did not represent an existing property right to which a lien could attach. Haughton had no present right to the wages and commissions. In *United States v. Long Island Drug Company,* 115 F.2d 983 (2d Cir. 1940), the taxpayer was an employee of the Long Island Drug Company. While subject to a federal tax lien, the employee agreed with the Drug Company that his future wages should be applied to pay a note held by the Drug Company which he had either co-signed or endorsed. The Government then levied on the Drug Company to the extent of the amount of the taxpayer's wages that the Drug Company had withheld pursuant to the agreement with the taxpayer.

A distinguished panel of the Court of Appeals for the Second Circuit including Judges Learned and Augustus Hand held the Government's levy to be wrongful. The opinion by Judge Augustus Hand stated:

Though we shall assume that a salary or wages which have been earned may be made subject to a lien for unpaid taxes and also subject to distraint and levy, the situation in respect to future earnings is quite different. They are contingent upon performance of a contract of service and represent no existing rights of property. They are quite distinguishable from the right of a cestui que trust whose equitable life estate may be subjected to a lien on behalf of the government for unpaid taxes. . . . In the same way they are distinguishable from a taxpay-

er's interest in an insurance policy upon his life, . . . Neither right of the taxpayer is contingent but is a fixed right to realize property or income derived therefrom dependent upon no future performance. Rights which do not exist at the time of the demand upon the taxpayer are not subjected to any lien. . . . Here there was no showing that the taxpayer had any claim against the Drug Company when the demand upon him for payment was made.

115 F.2d at 986 [citations omitted].

 Further, as we have already noted, the 1974 agreement, in essence, merely continued in effect the provisions of the letter agreement. Finally, although Haughton may have been assessed income taxes on the assigned future wages and commissions as they accrued and were transferred into the trusts, this does not indicate that he had a sufficient property interest in them to which a tax lien could attach. As one commentator noted in his discussion of the assignment of future income into trust, ". . . if the assignment was not gratuitous but satisfied an obligation of the taxpayer, it does not appear that the assigned income can be reached [by a federal tax lien], despite the assignor's continued taxability thereon." Plumb, *Federal Tax Collection and Lien Problems,* 13 Tax L.Rev. 254–55 (1958). In the instant case, the assignment of Haughton's future wages and commissions was not gratuitous because it was for the purpose of indemnifying Clune. The Government's levy on the trusts was, therefore, wrongful.

For the reasons hereinbefore stated, we affirm the judgment of the district court.