THE FIRST NATIONAL BANK OF INDIANAPOLIS *v.* NEW.

146  411
157  128

[No. 17,847.    Filed December 16, 1896.]

PROMISSORY NOTE.— *Payment.*—Defendant executed, as surety, a promissory note payable to a certain bank pursuant to an agreement, that in the event defendant assigned to the bank a certain

judgment owned by him he should be relieved of all liability on the note. On the death of the maker of the note it was filed and proven as a claim against his estate and defendant in accordance with his agreement assigned the judgment held by him to the bank. A receiver thereafter appointed for the bank sold all accounts, notes and choses in action of the bank. *Held,* that the note had wholly ceased to be an asset of the bank before the appointment of a receiver.

AGENCY.—*President of Bank as Agent.*—Where the president of a bank is held out to the public as fully empowered to attend to all the business of the bank, an adjustment by him of a claim in favor of the bank, by taking the assignment of a judgment, is valid.

EVIDENCE.—*Executed Parol Agreement.—Contemporaneous Written Obligation.*—An executed parol agreement may be proven even as against a written obligation contemporaneous with the parol agreement.

From the Marion Superior Court. *Affirmed.*

*Lamb & Hill,* for appellant.

*Duncan, Smith & Hornbrook,* for appellee.

HOWARD, J.—This was an action by the appellant against the appellee, on a promissory note, executed by the appellee and one John Hanna, on the 29th day of September, 1880, to the First National Bank of Indianapolis, No. 55.

There was an answer in four paragraphs: (1) Admitting the execution of the note, but averring that, in consideration of the assignment to the bank of a certain judgment, the appellee was released of all liability on the note; (2) a plea of payment; (3) a general denial; and (4) averring that at the time of the execution of the note it was agreed between the bank and appellee that whenever appellee should assign the said judgment to the bank such assignment was to be accepted in full satisfaction of appellee's liability on the note; and that, in pursuance of said agreement appellee did assign the judgment to the bank, and the same was accepted in full discharge of appellee's said liability.

The cause was tried by the court, and a special finding of facts made, with conclusions of law in favor of appellee.

Error is assigned on the conclusions of law, and also on the overruling of the motion for a new trial.

The facts as found by the court, with the conclusions of law thereon, are as follows:

"1st.    On the 29th day of September, 1880, the defendant, with one John Hanna as surety for him, executed to the First National Bank of Indianapolis, No. 55, the note in suit, in the form set out in the complaint; that William H. Morrison, president of the bank, transacted the business on behalf of the bank.

"2d.    That contemporaneous with the execution of the note, it was agreed by and between William H. Morrison, president of the bank, and said John Hanna and the defendant, that if thereafter said John C. New should, upon the request of the bank, assign to said bank a certain judgment theretofore recovered by the Indiana National Bank against said John Hanna, Frederick Knefler, George W. Parker and Aquilla Parker, on the 12th day of September, 1870, for $2,-782.47, in cause No. 14,297, in the Superior Court of Marion county, in the State of Indiana, and which had theretofore been assigned by said Indiana National Bank to said John C. New, such assignment would be accepted by the First National Bank of Indianapolis, Indiana, in full payment and discharge of said John C. New's liability on said note.

"3d.    That since the first of March, 1878, said William H. Morrison had been president of said bank, and had by the directors thereof been intrusted as chief executive officer of said bank, with the control and management of its affairs; that he spent his whole time during business hours at the bank, conducting its business; that he in all things directed the policy

of the bank; discounted paper at his discretion without consulting the directors or any other officer of the bank, and had the general management and control of its affairs with the consent of its directors; that the directors met at irregular intervals, sometimes months intervening between such meetings.

"4th. That after the maturity of said note, said Morrison continued as president until in the month of March, 1881, when he died; that immediately after his death Augustus D. Lynch was elected president of said bank, and continued as such until the 25th day of August, 1883, when he resigned, and A. B. Conduitt was elected as his successor.

"5th. That on the 31st day of August, 1881, the First National Bank of Indianapolis, Indiana, payee in said note, went into voluntary liquidation, its charter having expired, and on the 1st day of September, 1881, the First National Bank of Indianapolis, No. 2556, the plaintiff in this action, began business.

"6th. That said John Hanna died in the month of September, 1882, and some time after his death, but prior to June 14, 1884, said note, with others, was delivered by the payee therein, bank No. 55, to its attorneys, to be filed as a claim against the estate of said John Hanna, but without any instructions to proceed against John C. New; that said notes were filed as a claim against the estate of said John Hanna and allowed prior to June 14, 1884.

"6½. That on the 24th day of December, 1883, the defendant, John C. New, at the request of the president of the First National Bank of Indianapolis, No. 55, assigned said judgment against Hanna, Knefler, George W. Parker and Aquilla Parker, to said bank No. 55, which assignment to said bank No. 55 was made by said New in fulfillment of his agreement with said William H. Morrison, president of said bank,

made at the time of the execution of said note; and said assignment was by said bank received in fulfillment of such agreement.

"7th. That afterwards, on the 14th day of June, 1884, Harry J. Milligan was by the United States court in and for the District of Indiana, in a certain cause pending in said court, appointed receiver of the First National Bank of Indianapolis, Indiana, No. 55, the original payee of said note.

"8th. That upon the appointment of said Milligan as such receiver, he received the assets of said bank No. 55 from the officers thereof. And that in transferring such assets to said receiver, the officers described the claim against the estate of John Hanna as one of the assets of said bank No. 55, but no mention was made of any liability of said John C. New on said note. Nor was said note ever delivered to said Milligan as such receiver; nor did he ever at any time understand that he had as an asset of said bank any note upon which John C. New was liable as maker or in any other capacity.

"9th. That on the 31st day of October, 1885, said Milligan, as such receiver, acting under a proper order of the United States Circuit Court directing him to sell all the assets of said bank then undisposed of, made a sale of all such undisposed of assets. But at the time of his making such sale he did not have said note in his possession, did not know of its existence, did not understand he was selling any such note. In a schedule of assets for sale which he had caused to be printed, no mention was made of any such note. But therein there was disclosed and shown the claim against the estate of John Hanna.

"Upon such sale the plaintiff in this action, the First National Bank of Indianapolis, became the purchaser at a gross bid of all the assets of said bank No. 55,

then sold by said receiver under said order; and upon such sale executed to the plaintiff a certificate of such sale, reciting that he had been ordered to sell at public auction 'all claims, notes, judgments, choses in action * * and all other property of said bank or said receivership,' and declaring that he had sold 'all property of every description belonging to said bank No. 55 and of the receivership,' whether specifically described or not (saving and excepting certain claims not material to this issue) and confirming to said purchaser the sale of 'all the claims, notes, accounts, judgments, choses in action * * and all other property of said bank or said receivership' (saving and excepting some claims not material to this issue).

"That said assignee did not indorse to the purchaser the note in suit, although he did indorse to the purchaser all notes which he had in his possession, and he did formally assign to the purchaser the claim against the estate of John Hanna, and also the judgment hereinbefore referred to against Hanna, Knefler, George W. Parker and Aquilla Parker.

"10th.   From the conduct of Mr. Morrison after the maturity of the note in suit, until his death, and of Mr. Lynch during his presidency, and Mr. Conduitt during his presidency, and of the other officers of the bank, the court infers as a fact, and therefore finds as a fact, that such officers at the time knew of the agreement made between the defendant, William H. Morrison, on behalf of the bank, and the fact has escaped their recollection."

On the foregoing facts the court stated the following conclusions of law:

"1st.   The title to said note never passed to and became vested in the plaintiff.

"2d.   That in any event, whether the title to said note became vested in the plaintiff or not, upon the as-

signment of said judgment by the defendant to the First National Bank of Indianapolis, No. 55, the defendant was discharged from all liability on said note.

"3d.   That the law of the case is with the defendant, and he is entitled to judgment.

PLINY W. BARTHOLOMEW, Judge."

It is claimed that the first conclusion of law must be erroneous, since the facts found, particularly those in the ninth finding, show that the title to the note passed, through the receiver, from the payee, bank No. 55, to the appellant bank No. 2556.   Even if that were true it would, perhaps, be immaterial, in view of the remaining conclusions of law.   But we do not think the contention tenable.   Undoubtedly if the note remained an asset of bank 55 such asset would become the property of bank 2556.   It appears, however, by findings 2 and 6½, that all liability of John C. New on the note ceased on the assignment by him to the bank of the judgment mentioned in those findings; and, by finding 6, it further appears that the note was filed and allowed, with other notes, as a claim against the estate of John Hanna, the other signer of the note, thus merging the note in such claim, so far as the liability of Hanna or his estate is concerned.   The note therefore, according to the findings, had wholly ceased to be an asset of bank 55 before the appointment of the receiver.

By finding 9, it is further shown that the claim allowed against the Hanna estate in favor of bank 55, and also the said judgment assigned by appellee to said bank, both became, by assignment of the receiver, the property of the appellant bank No. 2556.

Appellant's principal argument is directed to the contention that the court erred in overruling the motion for a new trial, for the reason, as claimed, that

the findings are not supported by the evidence. If there was competent and sufficient evidence to sustain the findings, we could not disturb them, however much contradictory·evidence might have been given.

To enable appellee to succeed in his defense, it was necessary for him to prove, (1) the parol agreement averred to have been made between him and the bank when he executed the note, according to the terms of which agreement he was to be relieved of all liability on the note as soon as he should assign to the bank the judgment referred to; and, (2) that the agreement so made was carried out by the assignment of the judgment and its acceptance by the bank in discharge of his obligation on the note.

The evidence of the appellee is to the effect that the agreement made at the signing of the note was with William H. Morrison, then president of the bank. It is contended very earnestly that Mr. Morrison, as president, had no power to make such an agreement on the part of the bank, inasmuch as the making of such an agreement was out of the ordinary course of the business of the bank, and, consequently, beyond the scope of his agency as president. Many extracts are made from the by-laws to show that the power claimed to have been exercised by him in making the contract was not given to the president. Numerous authorities also are cited to show that the president of a bank cannot have such power unless the same is so expressly given.

It is true that, except as otherwise specifically provided in the charter, the business of a bank is in charge of its board of directors, and, without their authority to do so, the president cannot bind the bank in any unusual manner, or in any undertaking lying outside of its customary routine business. 1 Morse Banks and Banking, section 144. But, as said by the

same text writer, such unusual authority to the president may be given, not only by a formal vote of the board of directors, but also "by the existence of such facts as constitute a public holding out, and warrant the public in believing that the undertaking is within the scope of his legitimate delegated authority." Ib. See, also, *National, etc., Bank* v. *Vigo, etc., Bank,* 141 Ind, 352; *Evansville, etc., Co.* v. *Bank of Commerce,* 144 Ind. 34, 3 Am. and Eng. Corp. Cas. (N. S.) 249.

In this case, as the evidence shows, and as also expressly stated in the third finding of the court, Mr. Morrison was held out to the public as fully empowered to attend to all the business of the bank. Those dealing with the bank were therefore warranted in believing that he was authorized to attend to such general business with the public as might be transacted by the directors themselves. That would of course include such an adjustment of a claim in favor of the bank as was contemplated in this case, provided only the agreement was afterwards carried into effect. An executed parol agreement may be proved even as against a written obligation contemporaneous with the parol agreement. *Tucker* v. *Tucker,* 113 Ind. 272; *Zimmerman* v. *Adee,* 126 Ind. 15.

The proof that the agreement was so carried into effect by the assignment to the bank of the judgment against Hanna and others by appellee, was made by evidence satisfactory to the court, and which we think sufficient for the purpose. That the evidence is not such as to be altogether free from criticism, or that there was other competent evidence opposed to it, can not be a reason for reversing the judgment. The transactions had taken place many years before the trial. The judgment assigned to the bank by appellee had been taken against Hanna and others fifteen years before the trial, and the note in suit had been ex-

ecuted eleven years before that time. Mr. Morrison the president of the bank, had been dead for ten years, and Mr. Hanna, the judgment defendant, for nine years. Only Mr. New was living of those who had any personal recollections of the original transactions, and his memory was sometimes at fault. Neither is the evidence as to the circumstances attending the assignment of the judgment made on December 24, 1883, eight years before the trial, quite satisfactory. The court, however, held it sufficient, and we cannot say that it is not.

Some circumstances lend strong presumptions in favor of the finding of the court. While Mr. Morrison was yet living and remained president of the bank, knowing all about the transactions, and after the note was past due, Mr. New often had more money on deposit than would have paid the note, yet no call was ever made on him for payment. At Mr. Hanna's death attention was called to the note, and it was filed as a claim against his estate; yet no one asked Mr. New to pay the note, though both he and Mr. Hanna had signed it. In 1882, when a Mr. Shipp was elected director, he made diligent effort to learn the condition of the bank, yet he never heard of any indebtedness of Mr. New. In 1884, when the receiver was appointed, he never learned of any claim held by the bank against Mr. New; and while the receiver did assign to the appellee the claim against the Hanna estate, of which the note was in part the foundation, and also the Hanna judgment, he never saw or assigned the note in question. The circumstance, too, that nothing was ever paid on the note, either principal or interest, although at the commencement of the trial it was past due for nearly eleven years, a time longer than the period now provided by statute as a limitation to the bringing of an action on a promissory note, is also to

be taken into account in support of the claim that it was never expected that the note should be paid by the appellee otherwise than by the assignment of the Hanna judgment.

The judgment is affirmed.