IN THE MATTER OF THE LIQUIDATION OF BOURBON BANKING COMPANY, BOURBON, INDIANA.

FIRST STATE BANK OF BOURBON *v.* BINKLEY ET AL.

[No. 27,420. Filed December 10, 1940. Original mandate modified in opinion on rehearing January 21, 1941.]

98

*Walter R. Arnold, John Degnan, Charles Dohnalek,* and *Robert Zimmerman,* all of South Bend, for appellant.

*Don F. Kitch, Claude D. Carson,* and *Delph McKesson,* all of Plymouth, for appellees.

FANSLER, J.—This is an appeal from a judgment disallowing a claim of the First State Bank of Bourbon against the Bourbon Banking Company, which is in liquidation. The claim is based upon a promissory note, and there are certain allegations which the claimant relies upon as establishing that the validity of the note as a claim against the Bourbon Banking Company was adjudicated in a proceeding in which one of the stockholders of the Bourbon Banking Company sought to have the liquidation proceedings dismissed.

When the claim was filed, Henry M. Binkley, a stockholder in the Bourbon Banking Company, appeared for himself and others in like situation, and for the Bourbon Banking Company, and filed objections to the allowance of the claim, which are in the nature of an answer. His objections are: First, that the Bourbon Banking Company did not execute the note; second, that it was executed without consideration; and, third, that its execution was procured by fraud. There was a reply in general denial to the objections.

There was a trial, and a general finding and judgment against the claimant. A motion for a new trial, upon the grounds that the decision of the court is not sustained by sufficient evidence and that it is contrary to law, was overruled, and this ruling is assigned as error.

There is no conflict in the evidence. The Bourbon Banking Company was organized as a bank of discount and deposit under the laws of this state in 1907, and it continued in the banking business until December, 1926. In the latter month the following entry was made on the minute book of the board of directors of the First State Bank of Bourbon:

"Motion made by J. H. Matchett seconded by J. W. Davis to purchase such of the assets of the Bourbon Banking Co. as are required to pay the deposits of said Bourbon Banking Co. and its contingent liabilities.

"J. M. Matchett made a motion that C. M. Parks be employed by this bank at $100.00 per month as additional help, seconded by J. W. Davis. Motion carried.

"Mr. Beck appointed a committee of three, namely, Elmer F. Myers, G. D. Ettinger and J. H. Matchett to look over the notes that might be taken over in the purchase of the Bourbon Banking Co. Moved and seconded to adjourn. Motion carried."

C. M. Parks was at that time cashier of the Bourbon Banking Company, and Mr. Beck was president of both banks. On December 11, 1926, Mr. Beck delivered to C. M. Parks a written instrument in the following words:

"Bourbon, Ind., December 11th, 1926.

"At a meeting of the Board of Directors of The First State Bank of Bourbon, Indiana, it was decided to purchase such of the assets of the Bourbon Banking Company as are required to pay the deposits of said Bourbon Banking Company and its contingent liabilities. Signed in behalf of The First State Bank.

"The First State Bank,
"By M. M. Beck, President,
"By Owen S. Gaskill, Cashier."

On December 13th the stockholders of the Bourbon Banking Company held a special meeting, at which all but two shares of stock were represented, and voted to liquidate the bank. On the following day the directors of the Bourbon Banking Company met, and their minutes show the following record of their proceedings:

"Bourbon, Indiana
"December 14th, 1926.

"At a called meeting of the Board of Directors of the Bourbon Banking Company of Bourbon, Indiana, and pursuant to an order of the stockholders of said bank, having voted to go into voluntary liquidation, sell its assets and wind up the affairs of said institution.

"We, the Board of Directors of said institution, having had the matter under due consideration, concur in the opinion of the stockholders that it is for the best interest of the institution that it sell to The First State Bank of Bourbon, Indiana, a sufficient amount of its assets to pay its depositors, and other contingent liabilities, and that said board of directors have this day entered into an undertaking with the board of directors of The First State Bank of Bourbon, Indiana, whereby said sale and transfer is made.

"The board of directors of the Bourbon Banking Company has this day elected C. M. Parks as their liquidating agent, instructed and empowered him to represent them in carrying out of the details of this agreement.

"Signed, M. M. Beck, President.
"Signed, C. M. Parks, Cashier."

There is no direct evidence of the character of the undertaking entered into between the two boards of directors for the "sale" of assets, and it might reasonably be concluded at this point that the First State Bank was to purchase and pay for certain assets of the Bourbon Banking Company, and that the Bourbon Banking Company intended to take the cash purchase price and pay its obligations. But, from the conduct of the parties in carrying the transaction forward, it appears that this was not their understanding. When the representatives of the parties met, the First State Bank assumed and agreed to pay the deposit liabilities and the other liabilities of the Bourbon Banking Company, and thereafter they were paid, and there are no outstanding liabilities of that company, and no claims against that company except the claim here in controversy. Mr. Parks met with the representatives of the First State Bank on December 25, 1926. The liabilities of the Bourbon Banking Company on that date amounted to $165,394.14. At that meeting the First State Bank selected and took over the following assets:

| | |
|---|---:|
| 150 notes not secured by mortgage | $ 72,031.67 |
| 26 notes secured by mortgage | 80,002.84 |
| Draft on Chicago bank | 9,637.53 |
| Cash on hand | 2,721.53 |
| Cash items | 828.29 |
| Vault boxes | 175.00 |
| Table | 12.00 |
| Customers' bank books and blank checks | 85.79 |
| Total | $165,494.65 |

The total of these exceed the liabilities assumed by $97.51, which was credited to the Bourbon Banking Company in a checking account which was opened for it in the First State Bank. The following assets were left in the hands of Mr. Parks as liquidating agent for the Bourbon Banking Company:

| | |
|---|---|
| Notes _____ | $36,151.59 |
| Furniture _____ | 1,800.00 |
| Interest accrued, but not collected on assets sold, computed to date of sale_____ | 5,843.63 |
| Total _____ | $43,795.22 |

The only evidence which tends to disclose any further details of the transaction or of the manner or character of indorsement of the securities turned over to the First State Bank is furnished by four notes admitted in evidence, all dated in the year 1926 and payable to the Bourbon Banking Company, on the back of which there is stamped, with a rubber stamp, the following:

"For value received, I hereby guarantee the payment of the within note at maturity or any time thereafter.

"Bourbon Banking Co.
"By C. M. Parks."

This rubber-stamp indorsement is not dated. There were other indorsements, such as notations of interest payments, all of which were dated subsequent to the 25th day of December, 1926. It was stipulated that these notes were among those transferred by the Bourbon Banking Company to the First State Bank under the agreement of December, 1926, and that, with the exception of the notations on the same, which were plainly and obviously placed thereon, as indicated by the dates, subsequent to December 25, 1926, the notes are in the condition in which they were in the month of February, 1927. The objector, while agreeing to

the facts set out in the stipulation, reserved an objection on the ground of competency and materiality, but made no objection upon the ground that the execution of the indorsement on the notes had not been proven. These were but a small number of the notes transferred, and there is no evidence as to whether or not the remaining notes were indorsed with the same guaranty of payment.

Mr. Parks went to work in the First State Bank in January, 1927. The assets which had been turned over to the First State Bank were in the possession of that bank, but Mr. Parks had access to them, and the assets of the Bourbon Banking Company which he retained were kept in the First State Bank, in his nominal possession, but the officers and employees of the First State Bank had access to them.

The charter of the Bourbon Banking Company provided for nine directors. For a long time prior to December, 1926, the affairs of the bank were managed by five directors. In January, 1931, only three of these directors survived, and no other directors had been elected. On the 24th of January, 1931, these directors were summoned to the First State Bank. Among them was Mr. Beck, who was also president of the First State Bank, and another director who was an officer of the First State Bank. There they met with Luther F. Symmons, Banking Commissioner of Indiana, and Mr. Osborn, an attorney for the First State Bank, and two of the directors of the First State Bank. The fact that the assets which had been assigned by the Bourbon Banking Company to the First State Bank had not produced an amount equal to the liabilities assumed and paid by the latter bank was discussed. It was disclosed that Mr. Symmons had by letter advised the execution

of a deficiency note by the Bourbon Banking Company. Mr. Symmons advised the execution of the note, and informed the directors of the Bourbon Banking Company that if the matter was not adjusted promptly he would petition for the appointment of a receiver. At this time the Bourbon Banking Company had no debts or obligations unless it was obligated to the First State Bank. A note had already been prepared by the cashier of the First State Bank, and Mr. Symmons had previously prepared the following resolution:

"Resolved that the Bourbon Banking Co. by its officers and directors issue a note to The First State Bank of Bourbon, Indiana, covering the balance of certain notes which were assigned to The First State Bank by the Bourbon Banking Company, the face of which are now fifty-two thousand five hundred ten Dollars and forty-six cents, ($52510.46) together with the interest on the several notes to the date of the execution of said note. It being understood and agreed that the delinquent interest on said sundry notes be figured at the rate of five per cent and that said note shall bear interest at the rate of five per cent and be due in one year from the date of execution: That said note shall be termed deficiency note and be collateralized by all of the assets of every kind and description of the Bourbon Banking Co. If substantial reduction is made a renewal privilege will be granted. Should the Bourbon Banking Co. be the holders of real estate, the proper assignment thereof shall be made."

The resolution and the following note were signed, as indicated, and delivered to the First State Bank:

"Deficiency Note.
"Bourbon, Indiana, January 24th, 1931. $58,730.73.

"One year after date, without grace, for value received The Bourbon Banking Co. promise to pay to the order of THE FIRST STATE BANK Bourbon, Indiana Fifty-eight Thousand, Seven Hundred Thirty and 73/100 Dollars, with interest payable annually at the rate of five percent from date until due, and five per cent from maturity until paid, and attorney's fees, without relief from valuation or appraisement laws. The drawers and endorsers and guarantors severally waive presentation for payment, protest and notice of protest and non-payment of this note.

> "Bourbon Banking Co.
> "By M. M. Beck, Pres.
> "By C. M. Parks, Cashier and
> Liquidating Agent, and by
> L. A. Ferguson, Director.

"No. 22250
"Due January 24, 1932"

This is the note which is the basis of this action.

The articles of incorporation of the Bourbon Banking Company show that it was to have nine directors. The stockholders (all but two shares being represented, and no special defense is interposed on behalf of these two shares) permitted their corporation to continue for many years under the management of five directors. They voted to go into liquidation, leaving the details in the hands of these five directors. The directors elected Mr. Parks as liquidating agent, and entered into a contract with the First State Bank, which was executed by that bank, to the extent that it paid the obligations of the Bourbon Banking Company. Having permitted these directors to act for them, and having accepted the benefits of the contract, they are not now in a position to question the authority of the five directors to act for and bind their corporation.

The appellees have formulated a number of questions which they say are presented by the appeal. They ask first: "When negotiable instruments are sold by a bank in process of liquidation, does the endorsement of the instruments in blank by the liquidating agent create a liability on the part of the bank in liquidation to pay the same?" In the first place, there is no evidence of indorsement in blank. The only direct evidence of indorsement is the guaranty of payment placed on the back of a few notes with a rubber stamp. This indorsement is similar to that customarily used by banks in forwarding items for credit. A promissory note imports consideration, and the appellees had the burden of proving a lack of consideration. The note was signed by Mr. Parks as liquidating agent. He was a director of the Bourbon Banking Company at the time the original agreement was made, and he was the liquidating agent representing the directors of that bank in carrying out the details of the agreement, and he therefore knew the terms of the original agreement. If all of the notes were indorsed with the guaranty, and such a guaranty was within the terms of the original agreement, it would afford a consideration for the new note. Since the note imports a consideration, in the absence of evidence to the contrary, it must be assumed that the contract made the Bourbon Banking Company liable for the payment of the notes.

The items in the minute books of the two banks and the communication from the First State Bank to the Bourbon Banking Company furnish the only definite evidence of the character of the agreement between the parties, and it is apparent on their face that they do not disclose the entire agreement. We are required to look to the conduct of the responsible agents of the parties, together with

these instruments, in order to determine what was agreed upon and what was done in execution of the agreement. It is clear that the First State Bank assumed and took over the deposit obligations of the Bourbon Banking Company, and that these obligations were not paid by the Bourbon Banking Company. The arrangement therefore was not construed by the parties as contemplating a sale by the Bourbon Banking Company to the First State Bank of assets sufficient to produce a purchase price which would enable it to pay its own obligations. It was interpreted by the parties at the time, and put into effect, as a transaction by which the First State Bank would assume the obligations of the other bank, and in consideration thereof would receive "a sufficient amount of its assets to pay its depositors and other contingent liabilities." Minutes of the meeting of the directors of the First State Bank refer in the first paragraph to the purchase of assets, but in the third paragraph a committee is appointed "to look over the notes that might be taken over in the purchase of the Bourbon Banking Co." Nowhere is there any evidence of an agreement that the First State Bank would assume and pay the obligations of the Bourbon Banking Company in consideration of the transfer to it of assets of a face value equal to the amount of the liabilities. The minutes of the directors of the Bourbon Banking Company recite "that said board of directors have this day entered into an undertaking with the board of directors of The First State Bank of Bourbon, Indiana, whereby said sale and transfer is made," and Mr. Parks was elected liquidating agent, and they "instructed and empowered him to represent them in carrying out the details of this agreement." What this undertaking and agreement was must be gathered from all of the surrounding circum-

stances. The directors and officers of the bank who participated in the transaction were, because of death or other reasons, not available as witnesses, but there is much incidental evidence of what they did in carrying out the contract; and, in the absence of any showing of fraud or bad faith upon their part, it must be concluded that they acted in comformity with what they understood the requirements of the contract to be. It is clear that Mr. Parks, the liquidating agent, indorsed a guaranty of payment upon some of the notes that were transferred. This action is unexplainable if, in fact, the contract contemplated a transfer without recourse, and there is nothing to indicate a reason for guaranteeing these particular notes unless all of the notes transferred were guaranteed. The burden was upon the objectors to show that there was no consideration for the note. This burden involved the establishment of some state of facts inconsistent with the conclusion that there was a consideration. It does not appear that the stockholders of the Bourbon Banking Company placed any limitation upon the manner or method of liquidation. It follows that the then acting board of directors had full power and authority to adopt any reasonable method of liquidation, and to enter into any reasonable contract with the First State Bank for the payment of its obligations and the liquidation of its assets. The character of a man's contract is often established by his conduct in reference to the subject-matter, and no reason is seen why the character of a corporation's contract cannot be established by the conduct of its responsible officers who have authority to deal with the subject-matter. The character of the "undertaking" entered into between the boards of directors of the two banks is not disclosed by direct evidence, but the directors of the Bourbon Banking

Company had undoubted authority to elect Mr. Parks as its agent to represent it in carrying out the details of the agreement, whatever it might be. It is true that Mr. Beck was president of both banks at the time and that one other director of the Bourbon Banking Company was also a director in the other bank, but these facts must have been known to the stockholders of the Bourbon Banking Company, and there is no pretense of fraud or bad faith on the part of these directors. Mr. Parks, acting for his company, indorsed a guaranty on some of the notes, and possibly on all of them. In the absence of any showing to the contrary, it must be assumed that he was carrying out the contract and agreement as he understood it in so doing. When the three directors were called in by the Banking Commissioner in 1931, and the suggestion was made that they sign an indemnifying agreement, they appear to have acquiesced without protest, and this must be considered as evidence that they, who were directors at the time the original agreement was made, understood that the Bourbon Banking Company was responsible as a guarantor of the paper assigned. It cannot be assumed without evidence that they deliberately signed an obligation involving many thousands of dollars with knowledge that, under the original contract, there was no obligation to pay any sum. If the Bourbon Banking Company was not obligated to the First State Bank it had no obligations, and the suggestion that it would be put into receivership was but an idle and empty threat. It cannot be concluded, in the absence of any evidence, that responsible men, officers of banks, who were familiar with the whole transaction from its inception, would without objection or protest acknowledge a large indebtedness involving their own interests and the interests of their associates, knowing that there was

absolutely no basis or foundation for a claim of indebtedness. It must be concluded that the objector has entirely failed to sustain the burden of showing a lack of consideration for the note. Proof of a mere threat to take legal action if a demand is not complied with is not a showing of duress or fraud sufficient to defeat a contract. *U. S. Rubber Co.* v. *Moon et al.* (1931), 93 Ind. App. 571, 179 N. E. 26, and cases cited.

The appellees contend that, since the Bourbon Banking Company was chartered for twenty years only, it had no power to contract or transact business ■ beyond that time, and that the execution of this note five years after the date its charter expired is *ultra vires*. The constitutional provision referred to is Section 10 of Article 11 of the Constitution of Indiana, which provides: "Every bank or banking company shall be required to cease all banking operations, within twenty years from the time of its organization, and promptly thereafter to close its business." The twenty-year limitation is clearly upon "banking operations." "Promptly" is a comparative term. It will not be questioned that the bank promptly took steps toward liquidation, and that it procured the assumption of its obligations by a legally operating bank. If it assumed obligations therein which were not liquidated for five years, the other party having complied with its part of the contract and paid the bank's debts, the bank alone defaulting in its obligation, it does not lie gracefully in the mouth of the stockholders to say that, because for five years they have failed to meet their obligation out of assets still in the hands of their agent, they have a right to be discharged of it. No authority is cited to sustain appellees' contention. The controlling requirement of the constitutional provision is that the bank's business affairs shall be closed. New business

that is not incidental to the closing of the bank's affairs is not contemplated, but a complete closing out of its affairs is contemplated. The word "promptly" cannot be fastened upon by the stockholders of a bank to justify a division of its assets among themselves before they have complied with the controlling requirement that its business shall be closed.

In view of the verified answer of *non est factum*, the burden was upon the claimant to prove that the Bourbon Banking Company executed the instrument sued on. It is clear that it was signed in the name of the company by the president and by the liquidating agent. But it must appear that they had authority to sign for the bank. Generally, proof that the subject-matter of a transaction in respect to which a written contract is made is within the authority, or the apparent authority, of an officer of the corporation or of a partner, is sufficient to establish prima facie his authority to execute the written instrument for the corporation or partnership. See *Graves et al.* v. *Kellenberger* (1875), 51 Ind. 66; *National Bank of Terre Haute* v. *Vigo County National Bank et al.* (1895), 141 Ind. 352, 40 N. E. 799; *First National Bank of Indianapolis* v. *New* (1896), 146 Ind. 411, 45 N. E. 597; *Schellenbeck et al.* v. *Studebaker* (1895), 13 Ind. App. 437, 41 N. E. 845.

The facts disclose that the stockholders of the Bourbon Banking Company voted to go into liquidation. It does not appear that they put any limitation upon the authority of the directors as to the method and manner of liquidating. This action authorized the directors to liquidate the business of the bank in any reasonable manner. They entered into an "undertaking" with the First State Bank, by the terms of which it was to assume and pay the obligations

of the Bourbon Banking Company, and sufficient of its assets were to be assigned to the First State Bank to pay these obligations. This does not necessarily mean that the First State Bank was to accept notes at face value without recourse, nor does it mean that the Bourbon Banking Company was not to become liable as indorser or guarantor. The character of the transaction as agreed to and carried out must be proven by circumstantial evidence. There is evidence that some of the notes were expressly guaranteed. There is no evidence that all of them were not. It cannot be said that an agreement to guarantee was beyond the scope of the authority of the directors and of the liquidating agent whom they selected to carry out the contract for them. The note given imports a consideration, and there is no evidence that there was not a consideration. The most probable consideration that suggests itself is that in the first instance the payment of the notes transferred had been guaranteed. The indorsement of a guaranty on some of the notes and the conduct of the liquidating agent and the surviving directors in agreeing to sign the deficiency note are some evidence that there was an agreement guaranteeing payment. If this is true, the execution of the note in suit by the president and the liquidating agent was within the scope of their authoriy, and the signature of the corporation by them is the signature of the corporation, and therefore the execution of the instrument is proven.

The objector, speaking on behalf of the stockholders of the Bourbon Banking Company, has wholly failed to sustain the burden of showing that the note was executed without consideration or that it was procured to be executed by fraud or duress.

It follows that the claimant should have recovered, and, since the case was fully tried and it appears that

the evidence will not change, the judgment is reversed, with instructions to compute the amount due in view of payments made and credited, and to enter judgment for the appellant.

NOTE.—Reported in 30 N. E. (2d) 311.

## ON PETITION FOR REHEARING.

FANSLER, J.—In his petition for rehearing the appellee Binkley indicates that Mr. Beck, who was president of both banks when the "undertaking" was entered into between them, is living and available as a witness to the terms of the agreement, and that there are certain notes still extant and in the possession of the First State Bank of Bourbon, which are part of the original notes transferred, and that they are available as evidence of the character of the indorsement, if any. In view of these facts, it has been concluded that the original mandate should be modified, and that the appellant's motion for a new trial should be sustained.

In the original opinion questions involving the claimant's contention that the questions involved had been fully adjudicated in a former proceeding were not passed upon. The proceedings in question arose upon a petition by the appellee Binkley for an order enjoining the banking department from proceeding further with liquidation proceedings upon the ground that the Bourbon Banking Company was solvent and that there were no claims against it. The First State Bank of Bourbon was not a party to the proceeding. The court found that the note here in question was a valid and subsisting obligation, but if the finding had been otherwise it could not have bound the First State Bank, which was not a party to the proceeding. The question of the validity of this note was only inciden-

tally before the court in that action. If this claim founded on the note had been then pending in the liquidation proceedings, its validity could not have been determined in the other proceeding. There was no issue made between the First State Bank of Bourbon and the Bourbon Banking Company or the Department of Financial Institutions of the State of Indiana representing the Bourbon Banking Company, and therefore no basis for an adjudication of the questions involved in this law suit. See *Whitesell et al.* v. *Strickler et al.* (1907), 167 Ind. 602, 78 N. E. 845, and cases cited.

The mandate in the original opinion is modified, and the judgment is reversed, with instructions to sustain the appellant's motion for a new trial, and for further proceedings not inconsistent herewith.

Richman, J. Not participating.

NOTE.—Reported in 31 N. E. (2d) 52.